UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

KidsPeace Corporation,

        Plaintiff,

v.

                            MEMORANDUM OPINION
                                 AND ORDER
                        Civil No. 07-1864 (MJD/SRN)

Lexington Insurance Company,

        Defendant.

_____

        W. Patrick Judge, Briggs and Morgan, P.A. and Susan Ellis Wild, Gross McGinley, LLP, for and on behalf of Plaintiff.

        Paula Weseman Theisen and Dorothy Jaworski Paxton, Meagher & Geer, PLLP, for and on behalf of Defendant.

_____

        This matter is before the Court upon the parties' cross motions for summary judgment.

## I.    Factual Background

### A.  The Parties

        Plaintiff KidsPeace Corporation ("KidsPeace") is a private, non-profit corporation that provides specialized residential treatment services and a comprehensive range of treatment programs and educational services for youth

through a number of subsidiary corporations.  KidsPeace is a Pennsylvania corporation that is registered to do business in Minnesota.  Complaint ¶ 1. KidsPeace Mesabi Academy, Inc. ("Mesabi Academy") is a wholly-owned subsidiary of KidsPeace, and is located in Buhl, Minnesota.  Mesabi Academy is also a Pennsylvania corporation that is registered to do business in Minnesota. Id.  Mesabi Academy provides residential care, educational and vocational training and aftercare services in the areas of correctional, detention and juvenile justice, and is licensed by the Minnesota Department of Corrections.  (Susan Wild Affidavit (Ex. A), Strom Affidavit, ¶ 8.)  Mesabi Academy also provides treatment for sexual offenders.  (Id., ¶ 5.)  In fact, many of the youths for whom Mesabi Academy provides correctional services are there due to convictions for violent and/or aggressive behavior, including murder and rape. (Id., ¶ 9.)

Defendant Lexington Insurance Company ("Lexington") provided healthcare general liability insurance to Kidspeace from September 2002 to September 2003.  (Id., Ex. B.)  General liability coverage is subject to a $1,000,000 each-occurrence limit, with a $100,000 deductible. (Id.)

**B.    The Underlying Suit**

T.J. was hired by Mesabi Academy in 2002 as a youth care worker.  In May

2004, T.J. filed an employment law action against KidsPeace, Mesabi Academy and Michael Muehlberg, a co-worker.  In her Complaint, T.J. alleged that she was subjected to egregious sexual harassment and discrimination in the workplace, that culminated in a violent sexual assault against her by one of the youths housed at Mesabi Academy on June 38, 2003.  (Wild Aff., Ex. V.)  T.J. further alleged that KidsPeace negligently trained Mesabi Academy staff members which resulted in dangerous facilities.  T.J. alleged that as a direct result of such negligence, she "sustained severe and permanent injury, incurred medical expenses and wage loss, and will in the future incur medical expenses and loss of earning capacity to her great damage."   (Id., ¶¶ 63-66.)

That action was eventually settled for $2,000,000: $685,825.23 for attorney's fees, costs and disbursements and $1,314,174.77 for personal injury claims. (Paxton Decl., Ex. S.)  Chubb & Sons ("Chubb"), not a party to this action, provided employment practices liability insurance to KidsPeace from September 15, 2003 to September 15, 2004.  (Declaration of Dorothy Jaworski Paxton, Ex. F.) Chubb paid out $1.3 million of the settlement amount and KidsPeace paid the remaining $700,000.  (Id. Exs. S, L at Adm. 14.)

After the T.J. complaint was filed, KidsPeace made a demand upon Lexington to provide for its defense and for indemnification for any award or settlement.  Lexington denied coverage.  (Id., Ex. BB.)  While the T.J. litigation was pending, KidsPeace again sought coverage for the negligence claim asserted against it, but Lexington again denied coverage.  (Id., Exs. CC, DD and EE.)

In this action, KidsPeace seeks a declaration that the Lexington policy provides coverage for that portion of the settlement paid to T.J. by KidsPeace, $600,000 ($700,000 less the $100,000 deductible), and which requires Lexington to reimburse KidsPeace for defense costs incurred in defense of a covered claim. KidsPeace also seeks an award of $600,000 and $168,311.71, the amount of defense costs incurred.

## II.   Summary Judgment Standard

Summary judgment is appropriate if, viewing all facts in the light most favorable to the non-moving party, there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  The party seeking summary judgment bears the burden of showing that there is no disputed issue of material fact.  Celotex, 477 U.S. at 323.  This burden can be met "by 'showing' -

that is, pointing out to the district court - that there is an absence of evidence to

support the nonmoving party's case." Id. at 325.  The party opposing summary

judgment may not rest upon mere allegations or denials, but must set forth

specific facts showing that there is a genuine issue for trial.  Krenik v. County of

Le Sueur, 47 F.3d 953, 957 (8th Cir.1995).

## III.    Analysis

Lexington argues that its policy does not cover employment-based claims

or suits among insureds.  Lexington argues that as T.J.'s claims were

employment-based, and that she was an insured under the policy as an employee

of Mesabi Academy, these exclusions apply to bar coverage.

### A.  Standard for Interpretation of Insurance Coverage

Under Minnesota law, "the initial burden of proof is on the insured to

establish a prima facie case of coverage." SCSC Corp. v. Allied Mutual Ins.Co.,

536 N.W.2d 305, 311 (Minn. 1995) (citing Boedigheimer v. Taylor, 287 Minn. 323,

329, 178 N.W.2d 610, 614 (1970)). "The policy must be read as a whole, and

unambiguous language must be accorded its plain and ordinary meaning." Id. at

311 (citing Henning Nelson Constr. Co. v. Fireman's Fund Am. Life Ins. Co., 383

N.W.2d 645, 652 (Minn.1986)).  Any ambiguity is construed in favor of the

insured.  Lott v. State Farm Fire & Cas. Co., 541 N.W.2d 304, 307 (Minn. 1995).

When an insurer denies coverage pursuant to an exclusion listed in the policy,

the burden is on the insurer to show the applicability of the exclusion.  SCSC

Corp., 536 N.W.2d at 313.

**B.  Chubb Policy**

From September 15, 2003 to September 15, 2004, Chubb provided

employment practices liability insurance.  The policy included a $150,000 self-

insured retention and a $10 million aggregate limit.  (Paxton Decl., Ex. F.)  This

policy provided coverage for "Claims first made against [Insured Persons]

during the policy Period."  (Id. at KP-01966.)  "Claim" is defined as a "Wrongful

Act", which in turn is defined as including "employment practices wrongful

acts."  (Id. at KP-01966-67, 02001.)  Finally, "employment practices wrongful acts"

is defined as including employment discrimination, employment harassment,

retaliation and workplace torts - which includes negligent training and failure to

enforce corporate policies and procedures.  (Id. at KP-01999-02001.)

**C.  Lexington Policy**

The Lexington policy in place during the relevant time period provided

that Lexington was obligated to indemnify KidsPeace for "those sums that an

Insured becomes legally obligated to pay as damages because of bodily injury or property damage to which this Coverage Part applies." (Wild Aff., Ex. B at LEX000976.) The policy further provides that coverage applies to bodily injury that is caused by an occurrence, within the policy period. (Id.) "Occurrence" is defined as "an accident . . . which results in bodily injury or property damage neither expected or intended from the standpoint of the insured." (Id. at LEX000990.) The policy defines "Insured" as "You", to which "You" and "Your" is defined as the First Named Insured, which is KidsPeace, and any other Named Insured, which includes Mesabi Academy. (Id. at LEX000987, LEX001017.) Insured is also defined to include "your employees" "while in the course of his or her employment or while performing duties related to the conduct of your business." (Id. at LEX000977.)

It is KidsPeace's position that the negligence claim asserted against KidsPeace by T.J. is a covered claim under the policy, as the alleged bodily injury was the result of an act neither expected or intended by the insured. As a covered claim, KidsPeace was entitled to a defense and indemnity under the policy. Lexington, however, asserts that three exclusions apply which deny

KidsPeace coverage with respect to the underlying litigation brought by T.J.[1]  The

first is the "Employer's Liability" exclusion, Exclusion B.  Pursuant to this

exclusion, the policy does not apply to any occurrence, claim or suit arising out

of:

>    Bodily injury to an employee of yours arising out of and in the course of:
>
>    a.    Employment by you; or
>    b.    Performing duties related to the conduct of your business; or
>    c.    Any Occupational Disease . . .

(Id. (Exclusion B) at LEX000978-79.)

The policy also includes an "Employment Practices" exclusion, which

excludes coverage for:

>    Any refusal to employ, termination of employment, coercion, demotion,
>    evaluation, reassignment, discipline, defamation, harassment, humiliation,
>    or other practices or policies related to employment or professional
>    privileges.

(Id. (Exclusion F) at LEX000980.)

Finally, the policy includes an "Insured vs. Insured" exclusion, which acts

to bar coverage for claims between "Insureds."  (Id. (Exclusion M) at LEX000981).

---

[1]In its brief in support of summary judgment, KidsPeace addressed the Sexual Misconduct Exclusion.  In response, Lexington asserts that it does not rely on the Sexual Misconduct Exclusion in denying coverage.  Accordingly, there is no discussion with respect to the Sexual Misconduct Exclusion in this Memorandum Opinion.

### 1. Exclusion B - Employer's Liability

With respect to Exclusion B, Employer's Liability, Lexington argues that T.J.'s suit arose solely from her employment at Mesabi Academy, and her alleged injuries relate entirely to the alleged harassment, discrimination and retaliation by Mesabi Academy and negligence by KidsPeace. Because all claims arise out of employment with Mesabi Academy, the Employer Liability exclusion applies.

Lexington further argues that to invoke the employer liability exclusion, there must be a causal connection between T.J.'s injury and her employment status with either Mesabi Academy or KidsPeace, and the causal connection is easily satisfied in this case. Furthermore, Lexington argues that employer liability exclusions are routinely enforced under Minnesota law, citing Soo Line R. Co. v. Brown's Crew Car of Wyoming, Inc., 2003 WL 943843 at *3 (Minn. Ct. App. Mar. 11, 2003) (citing Utica Mut. Ins. Co. v. Emmco Ins. Co., 243 N.W.2d 134, 139 (Minn. 1976) and St. Paul fire & Marine Ins. Co. v. Seagate Tech., Inc., 570 N.W.2d 503 (Minn. Ct. App. 2003). Similarly, Pennsylvania law upholds employer liability exclusions in insurance policies. See Forum Ins. Co. v. Allied Security, Inc., 866 F.2d 80 (3rd Cir. 1989).

KidsPeace responds that whether the employer liability exclusion applies

depends on the interpretation of the meaning of the terms "you" and "your" as

defined in the policy.  If "you" refers only to the insured against whom a claim

has been made and for which coverage is sought, i.e. KidsPeace, then the

exclusions do not apply since T.J. is not an employee of KidsPeace.  However, if

"you" is read in the collective sense - referring to all insureds in any potential

claim covered, without regard to whether a claim has been asserted against those

insureds or whether those insureds sought coverage under the policy, then T.J. is

an employee of "you" and an "Insured" under the exclusion.

It is KidsPeace's position that the policy requires that "you" and "your"

must be applied severally rather than collectively under the terms of the

"Separation of Insureds" provision also included in the policy.  This provision

states:

> Except with respect to the Limits of Insurance and deductible, and except
> with regard to any rights or duties specifically assigned in this Policy to the
> Named Insured, this insurance applies:
>
> 1.      As if each Insured were the only insured; and
> 2.      Separately to each Insured against whom a claim is made or suit is
>         brought.

(Id. at LEX000996.)  Minnesota courts have interpreted similar provisions as

requiring that exclusions be construed only with reference to that particular

insured seeking coverage.  Traveler's Indemnity Co. v. Bloomington Steel and

Supply Co., 718 N.W.2d 888, 894 (Minn. 2006).  Since KidsPeace is the insured

seeking coverage here, the policy is construed only with reference to KidsPeace.

Accordingly, the "you" in the employer liability exclusion refers to KidsPeace.

As T.J. was  an employee of Mesabi Academy, not KidsPeace, the employer

liability exclusion would not apply, since the injuries alleged did not arise out of

employment with KidsPeace.

KidsPeace further asserts that there is a conflict of law with respect to how

Pennsylvania and Minnesota courts have interpreted the separation of insureds

provision.  KidsPeace asserts that while Minnesota courts have given effect to

such provisions, see Utica Mut. Ins., 243 N.W.2d at 142 , Pennsylvania courts

have not.  See Pennsylvania Mfr.'s Ass'n Ins. Co. v. Aetna Cas. And Sur. Ins. Co.,

426 Pa. 453, 244 A.2d 548 (1967).   Thus, KidsPeace concedes that if Pennsylvania

law applies, Exclusion B would exclude coverage here.

Lexington argues that there is no conflict with respect to the interpretation

of the separation of insureds provision, because the cases cited do not apply the

severability provision to a specific, collectively-defined term as exists in this case.

11

Here, the policy defines "you" and "your" as the First Named Insured (KidsPeace) and any other Named Insured (Mesabi Academy).  With respect to the employer's liability exclusion, the policy does not apply coverage to "an employee of yours."  Since "yours" is defined collectively, it should be considered collectively in this exclusion.  If the Court were to find a conflict exists, however, Lexington argues that Pennsylvania law should govern the interpretation of the policy at issue.

### a.  Conflict of Laws

In diversity cases, the forum state's choice of law rules apply.  Ferrell v. West Bend Mut. Ins. Co., 393 F.3d 786, 796 (8th Cir. 2005).  Applying Minnesota's choice of law analysis, the first issue to be addressed is whether there is an actual conflict between the legal rules of the two states.  Nodak Mut. Ins. Co. v. American Family Ins. Co., 590 N.W.2d 670, 672 (Minn. Ct. App. 1999).  "An actual conflict exists if choosing the rule of one state or the other is 'outcome determinative.'"  Id.

The Court finds that application of Minnesota law or Pennsylvania is outcome determinative.  Minnesota law clearly provides that employer liability exclusions only apply where the insured seeking coverage is the employer, while

Pennsylvania law appears to apply such exclusions if one of the insureds is the employer - not necessarily the insured seeking coverage.

Where there is an actual conflict, this Court must apply a five factor test to determine which law should govern. Milkovich v. Saari, 295 Minn. 155, 203 N.W.2d 408 (1973). These factors are: 1) predictability of results; 2) maintenance of interstate order; 3) simplification of the judicial task; 4) advancement of the forum state's interests; and 5) application of the better rule of law. Id., 203 N.W.2d at 412. The factors are not to be mechanically applied, but are meant "to prompt the courts to carefully and critically consider each new fact situation and explain in a straightforward manner their choice of law." Jepson v. General Casualty Company of Wisconsin, 513 N.W.2d 467, 470 (Minn. 1994).

### i. Predictability of Results

This factor concerns whether the choice of law was predictable before the time of the transaction or the event which gives rise to the cause of action. Schumacher v. Schumacher, 676 N.W.2d 685, 690 (Minn. Ct. App. 2004). KidsPeace argues this factor weighs in favor of applying Minnesota law as Lexington should have foreseen the types of claims that would arise, such as the one brought by T.J., given the nature of services provided at Mesabi Academy

and the fact that Mesabi Academy operates in Minnesota.  See Medical Graphics

Corp. v. Hartford Fire Ins., 171 F.R.D. 254, 261 (D. Minn. 1997) (citations omitted)

(finding that as insurance protection has no boundaries, predictability of results

is not advanced by applying law of State in which insurance contract arose).

Lexington, on the other hand, argues that this factor weighs in favor of

Pennsylvania law, as KidsPeace is a Pennsylvania corporation, and negotiated

the policy in Pennsylvania.  Furthermore, the policy covers KidsPeace, as well as

other entities that are not located in Minnesota.  Lexington argues that it would

thus follow that the parties intended Pennsylvania law would apply to ensure

that the policy was applied consistently with respect to all entities covered.  In

support, Lexington cites to Jepson.  In Jepson, the court held that in contract

cases, predictability of results contributes to the parties receiving the benefit of

the bargain.  513 N.W.2d at 470.  Based on the facts before it - that the parties

negotiated a North Dakota contract, based on North Dakota rates, covering

named insureds with North Dakota addresses and North Dakota registered

vehicles - the court held that predictability of results factor weighed in favor of

application of North Dakota law, despite the fact that the accident occurred in

Arizona.  Id. at 471.

Contrary to Lexington's assertions, <u>Jepson</u> does not stand for the broad proposition that application of the law of the State in which a contract was negotiated furthers the predictability of results consideration.  For example, in <u>Medical Graphics Corp.</u>, the court determined that the <u>Jepson</u> ruling was based on the particular facts of that case, not on the general proposition that the state law of the State in which the insurance contract was negotiated controls.  171 F.R.D. at 261.  Where the insured is on notice that claims could arise in different states, the predictability of results factor should be given little consideration.  <u>Id.</u>

Here, Lexington was on notice that claims could arise in Minnesota, given the fact that one of the named insureds under the policy was located in Minnesota.  This Court similarly finds that this factor should be given little consideration.

### ii.  Maintenance of Interstate Order

This factor concerns the assurance of "the free and unpenalized interstate movement of people and goods necessary to the success of the federal system." <u>Nodak</u>, 590 N.W.2d at 673.  "This requires deference to a sister state's legal rules when that sister state has a substantial concern with the problem, even when the forum state also has an identifiable interest."  <u>Id.</u>  Under this factor, courts are

15

directed to examine the contacts between the forum state and the underlying facts of the claim.  Jepson, 513 N.W.2d at 471.

KidsPeace argues that application of Minnesota law would not disrespect Pennsylvania's sovereignty as the underlying action all took place in Minnesota. Lexington argues that Pennsylvania has significant interests in applying its laws to contracts entered into in its jurisdiction.  Lexington further asserts that while Minnesota may have a strong interest in providing for the compensation of injured residents, it has comparatively little interest in determining whether KidsPeace or its insurers pay for that injury.

The Court finds that this factor weighs in favor of application of Minnesota law.  It is undisputed that Lexington was on notice that one of the named insureds, Mesabi Academy, operated in Minnesota, and that the underlying suit is totally based on facts that arose in Minnesota.  Although T.J. was compensated through the settlement reached between KidsPeace and Mesabi Academy, such fact should not diminish the significance of the injury, and the fact that the injury took place in Minnesota.  See Costco Wholesale Corp. v. Liberty Mut. Ins. Co., 472 F. Supp.2d 1183, 1201 (S.D. Cal. 2007).

### iii.  Simplification of the Judicial Task

This factor is insignificant, as courts can just as easily apply the law of

another state as easily as their own.  Jepson, 513 N.W.2d at 472.

### iv.  Advancement of Forum State's Interests

This factor is designed to ensure that Minnesota courts will not have to

apply a state law that is "inconsistent with Minnesota's concept of fairness and

equity."  Schumacher, 676 N.W.2d at 691 (quoting Medtronic, Inc. v. Advanced

Bionics Corp., 630 N.W.2d 438, 455 (Minn. Ct. App. 2001)).  With regard to this

factor, KidsPeace asserts that Minnesota has a very strong interest in ensuring

that tort victims are compensated.  Applying Minnesota law to issues such as this

would ensure that a tort victim would be compensated, because it expands

coverage.

Lexington argues that the only remaining issue is whether KidsPeace or

Lexington will assume the cost of the tort victim's compensation.  As noted

above, however, the Court should not place undue emphasis on the fact that a

settlement was reached in the underlying litigation.  Rather, the Court's focus

should be the nature of the injury, and where the injury occurred.

Accordingly, the Court finds that this factor weighs in favor of the

application of Minnesota law, since Minnesota's interpretation expands coverage,

which furthers Minnesota's interests in ensuring that tort victims are

compensated.

### v. Better Rule of Law

This factor focuses on whether one rule of law is objectively better than

another.  It should be applied only when the first four factors do not clearly

resolve the choice of law question. <u>Medical Graphics</u>, 171 F.R.D. at 262.

KidsPeace argues that Minnesota has the better rule of law, because the

Minnesota court's decisions are based on a lengthy analysis, with references to

other state's rules and learned treatises.  <u>See</u> <u>Utica Mut. Ins. Co.</u>, 243 N.W.2d at

140-42.  Minnesota also has the better rule of law from a socio-economic

perspective - because under circumstances such as present here, the Minnesota

rule would provide coverage.  Finally, application of the Pennsylvania rule

would render the separation of insureds provision meaningless.

Lexington argues that while the two state laws are different, neither one is

better.  From a socio-economic standpoint, Lexington reasserts that the tort victim

has been compensated, so this argument is irrelevant.  Further, Lexington argues

that its interpretation of the policy, pursuant to Pennsylvania law, does not

render the separation of insureds provision meaningless.  Rather, its interpretation treats numerous classes of insureds severally, while giving effect to the policy's definition of "you" and "your."

The better rule of law would appear to be that law that expands coverage, which rule is followed in many jurisdictions, including Minnesota.  See, Costco, 472 F. Supp.2d at 1203 (noting that Pennsylvania's law as to the interpretation of separation of insureds provision "appears archaic and isolated in the context of the laws of the federal union.")  Accordingly, this factor weighs in favor of the application of Minnesota law.

Because Minnesota law applies, the Court hereby finds that the Separation of Insured's provision in the policy provides that the employer liability exclusion applies only where the named insurer seeking coverage is also the employer.  In this case, KidsPeace is the named insured that is seeking coverage, and T.J. was not employed by KidsPeace.  Accordingly, the employer liability exclusion does not bar coverage in this case.  See Traveler's Indem. Co., 718 N.W.2d at 894.

### 2.    Exclusion F, Employment Practices

Lexington argues that this exclusion bars coverage for liability "arising out of" any practices or policies related to employment.  See Meadowbrook, 559

N.W.2d at 419.  It is Lexington's position that T.J.'s claims against KidsPeace turn

on employment related practices, because without the allegedly negligent

training provided by KidsPeace and her status as an employee of Mesabi

Academy, T.J. would not have a negligence claim against KidsPeace.

KidsPeace argues that this exclusion does not apply as KidsPeace did not

employ T.J., nor did T.J. base her claims against KidsPeace pursuant to an

employer/employee relationship.  Rather, the claims against KidsPeace stemmed

from its third-party contractual relationship with Mesabi Academy.  (Wild Aff.,

Ex. V, TJ Complaint ¶¶ 63-66.)  Accordingly, the employment practices exclusion

does not apply on its face.  See North Am. Bldg. Maintenance, Inc. v. Fireman's

Fund, 137 Cal. App. 4th 627, 642, 40 Cal. Rptr.3d 468, 479-80 (2006) (holding that

employment practices exclusion applied only where there was an employment

relationship between the insured and the third-party); Nat'l Football League v.

Vigilant Ins. Co., 36 A.D.3d 207, 214-15, 824 N.Y.S.2d 72, 77 (N.Y. App. Div. 2006)

(same).

Lexington responds that this particular exclusion, as opposed to the

employer's liability exclusion, does not require an employment relationship

between KidsPeace and T.J.  T.J. alleged that she was injured as a result of

KidsPeace's negligent breach of a contract to provide employment related services such as staff training, employment practices and policies and workplace design, and these are the types of claims covered by this exclusion.  In support, Lexington cites to the decision in <u>Agricultural Ins. Co. v. Focus Homes, Inc.</u> for the proposition that the Eighth Circuit has taken a broad view of employment related exclusions.  <u>Agricultural Ins.</u> does not support this proposition, however, based on the court's determination that such exclusion need not be addressed given the fact that the employer liability exclusion barred coverage.  <u>Id.</u> 212 F.3d 407, 411 (8th Cir. 2000).  Lexington also cites to the decision in <u>Weinstein Sup. Corp. v. Home Ins. Co.</u>, Civ. No. 97-7195, 1999 WL 310590 at *4 (E.D. Pa. May 10, 1000), but that case is distinguishable on its facts, as it involved parties in a former employer/employee relationship.

KidsPeace argues that the Court should apply the principle of *ejusdem generis* to interpret the employment practices exclusion.  This principle provides that "when a general word or phrase follows a list of specific persons or things, the general word or phrase will be interpreted to include only persons or things of the same type as those listed." <u>Black's Law Dictionary</u> 535 (7th ed. 1999).  <u>See also</u> <u>Henning Nelson Constr. Co. v. Fireman's Fund Am. Life Ins. Co.</u>, 383

21

N.W.2d 645, 652-53 (Minn. 1986) (citing <u>Wyatt v. Northwestern Mut. Ins. Co. of Seattle</u>, 304 F. Supp. 781, 784 (D. Minn. 1969)).  The Court agrees.

As applied here, the general phrase "other practices or policies" must be construed in the context of the previous listed types of excluded claims which is the "refusal to employ, termination of employment, coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation." Since the enumerated excluded claims are those that require an employment relationship, the Court finds that the "other practices or policies" clause similarly requires an employment relationship.  Since T.J. was not an employee of KidsPeace, this exclusion does not apply.

### 3.  Insured vs. Insured

Finally, Lexington argues that coverage is not applicable to any claim made by one insured against another insured.  Lexington further asserts that Minnesota courts have routinely deemed similar exclusions to be unambiguous and have enforced them as written.  <u>See</u> <u>eg.</u> <u>Miller v. ACE USA</u>, 261 F. Supp.2d 1130, 1138 (D. Minn. 2003); <u>Foster v. Kentucky Hous. Corp.,</u> 850 F. Supp. 558, 561 (E.D. Ky. 1994).

KidsPeace argues that this exclusion does not apply because T.J. was not an employee of KidsPeace.  The policy defines Insured as including you and your employees.  Because the policy includes a separation of insureds provision, such provision requires that T.J. be an employee of the named insured which is seeking coverage.

Lexington responds that, as with the employer's liability exclusion, "you" is defined collectively.  Adopting KidsPeace interpretation would write the collective definition of "you" out of the policy, and insurance contracts are to be interpreted to give meaning to all terms.  Mutual of Omaha Ins. Co. v. Bosses, 237 A.2d 218 (Pa. 1968); Steel v. Great W. Cas. Co., 540 N.W.2d 886 (Minn. Ct. App. 1995).

As this Court has previously found that the Separation of Insureds provision requires the Court to analyze coverage based on the named insured seeking coverage, the Court finds that the "insured vs. insured" provision similarly does not bar coverage.

Because none of the exclusions apply here, the Court hereby finds that the policy provided coverage for the negligence claim asserted against KidsPeace by T.J.

### 4.  Damages

#### A.  Indemnity

Lexington argues it is entitled to summary judgment as to KidsPeace's claim for money damages because the $700,000 paid by KidsPeace pursuant to the settlement agreement are not recoverable under the policy, as such sum represents attorneys fees incurred by T.J. in the underlying litigation in connection with the asserted employment claims.  There is nothing in the settlement agreement which supports this argument, however.  Rather, the settlement agreement simply provides that of the $2 million settlement amount, of which $685,825.23 goes towards attorneys fees and $1,314,174.77 as compensation for personal injuries.  (Wild Aff., Ex. Y, ¶ 2(a).)  The settlement agreement is silent as to any side agreement between KidsPeace and Chubb as to which party would cover what amount.

Lexington further argues that the $700,000 check was made out to the law firm, not to T.J., therefore it is reasonable to infer the payment covered the attorneys fees.  The Court recognizes, however, that it is not unusual that settlement checks are made out to the plaintiff's attorney, and that the plaintiff's attorney would then issue a check to the plaintiff.  Thus, the fact that KidsPeace

issued to the check to T.J.'s attorney is not evidence that KidsPeace paid the attorneys fees.

Contrary to Lexington's assertions, the record demonstrates that Chubb accepted the tender of the claims of wrongful employment practices, but reserved its right to deny coverage for any claims for physical injury.  (<u>Id.</u>, Ex. AA.) Chubb's policy excluded coverage for claims for actual or alleged bodily injury that do not arise from covered employment claims.  (<u>Id.</u>, Ex. TT, p. 3.) Furthermore, KidsPeace has presented evidence that KidsPeace contributed $700,000 towards the settlement after learning that Chubb would not indemnify KidsPeace as to the negligence claim.  (<u>Id.</u> Ex. UU, ¶p 16-17, referring to Chubb correspondence dated March 9, 2006, in which Chubb indicated it would indemnify only for the employment-related claims, Ex. VV.)

Based on the above, the Court finds that KidsPeace is entitled to summary judgment on its claim for money damages in the amount of $600,000.

## B.  Defense Costs

In addition to indemnification for the amount paid to T.J. under the settlement agreement, KidsPeace also seeks to recover $168,311.71 in defense costs incurred on its behalf in the underlying action.  In support, KidsPeace has

submitted the affidavit of Carol Williams, collection manager from Briggs & Morgan and Debra O'Connell from the Gross McGinley law firm. (Wild Aff., Exs. FF and GG.)

It is well established that the duty to defend is broader than the duty to indemnify. <u>Wooddale Bldrs, Inc. v. Maryland Cas. Co.</u>, 722 N.W.2d 283, 302 (Minn. 2006). It is also well established that "each insurer owes its insured an independent duty to defend, and an insurer that provides a defense is not entitled to recovery of costs from the insurers that did not provide a defense." <u>Id.</u> However, when no insurer undertakes to provide a defense, "the insured may recover its defense costs from any of its insurers, and the insurers, as between them, shall be equally liable for the insured's defense costs." <u>Id.</u>

In this case, one insurer, Chubb, did provide a defense to Mesabi Academy and KidsPeace in the underlying litigation. The law firm of Briggs & Morgan was retained as lead counsel on behalf of KidsPeace and Mesabi Academy in the underlying litigation. (Wild Aff., Ex. UU, ¶ 9.) Gross McGinley was also retained to provide legal services on behalf of KidsPeace with respect to the negligence claim asserted against it in the underlying litigation. (<u>Id.</u> ¶¶ 13-14.) The legal bills generated by Gross McGinley totaled $45,477. (<u>Id.</u> ¶ 20.)

KidsPeace paid the sum of $122,834.71 to Briggs & Morgan, in compliance with Chubb's deductible provision, and Chubb paid the remaining amounts billed by Briggs & Morgan.  (Id. ¶¶ 20-21.)

Lexington first argues that KidsPeace is not entitled to reimbursement of fees paid to Briggs & Morgan, as such fees were paid in compliance with the deductible under the Chubb policy.  Lexington provides no support for this argument, however, where two insurance policies provide coverage for different claims, as is the case here.

Lexington next asserts that KidsPeace has not demonstrated that the attorneys fees for which it seeks reimbursement were generated in defense of the negligence claim asserted against KidsPeace.  Briggs & Morgan provided legal services to both Mesabi Academy and KidsPeace in the underlying action, yet the billing documents submitted do not indicate which fees are attributable to the defense of the negligence claim or to the defense of the employment-related claims.  Lexington further argues that KidsPeace has not demonstrated that the fees generated by Gross McGinley were in defense of the negligence claim asserted against KidsPeace.

The Court finds that KidsPeace has sufficiently demonstrated that the fees incurred by Gross McGinley were in defense of KidsPeace with respect to the negligence claims. The record is not clear, however, regarding the fees incurred by Briggs & Morgan. The billing records submitted do not indicate with specificity that the legal services provided relate to defense of a certain claim. Accordingly, KidsPeace is directed to submit to the Court additional evidence in support of its claim that it is entitled to reimbursement for those fees incurred by Briggs & Morgan and paid by KidsPeace under the Lexington policy.

IT IS HEREBY ORDERED:

1.    Plaintiff KidsPeace Corporation's Motion for Summary Judgment [Doc. No. 24] is GRANTED as follows:

(i)    It is hereby declared that the Healthcare General Liability Coverage of the policy of insurance issued to KidsPeace Corporation by Lexington Insurance Company, Policy No. 2004826, obligates Lexington Insurance Company to indemnify KidsPeace Corporation for settlement payments and to reimburse defense costs incurred in connection with claims brought against KidsPeace Corporation by TJ in the

28

Matter of <u>TJ v. Mesabi Academy of KidsPeace, Inc., KidsPeace Corp., et al.</u>, 04-CV-2847, United States District Court for the District of Minnesota (the "TJ Litigation");

(ii)     Judgment is hereby entered in favor of KidsPeace Corporation and against Lexington Insurance Company in the amount of $600,000 for payments made by KidsPeace Corporation in settlement of the TJ Litigation; and

(iii)    Judgment is hereby entered in the amount of $45,477 in damages for defense costs incurred by the law firm of Gross McGinley.

2.     Plaintiff shall submit to the Court additional documentary evidence demonstrating which fees incurred by the law firm of Briggs & Morgan are attributable to the defense of KidsPeace with regard to the negligence claim asserted in the underlying litigation.

3.    Defendant Lexington Insurance Company's Motion for Summary

Judgment [Doc. No. 26] is DENIED.

Date:  June 15, 2009

s/ Michael J. Davis
Michael J. Davis
Chief Judge
United States District Court

Civil No. 07-1864